**FIRST NAT. BANK OF WAURIKA et al. v. CLAY et al.**

No. 8923—Opinion Filed Aug. 20, 1918.

On Petition for Rehearing, Nov. 12, 1918.

Second Petition for Rehearing Denied Jan. 7, 1919.

(177 Pac. 115.)

1.  **Oil and Gas—Lease—Approval of Title —Grounds of Disapproval—Good Faith.**

A contract for the sale of an oil and gas lease stipulated that the mutual obligations of the parties should accrue only in case of approval of the title of the land by the attorney of the purchaser. Held, that

it is immaterial, in case of disapproval of the title by such attorney, on what grounds he objects, provided the disapproval is in good faith.

**2. Same—Burden of Proof—Good Faith.**

Where one who contracts to purchase an oil and gas lease, subject to the approval of the title of the land by his attorney, refuses afterwards to complete the purchase because the title is disapproved by such attorney, and the vendor seeks to enforce the sale, the burden is upon such vendor to prove that the vendee or his attorney acted in bad faith in rejecting the title.

**3. Same—Evidence—Approval of Title—Good Faith—Harmless Error.**

. Testimony as to the grounds upon which an attorney for a proposed vendee of an oil and gas lease bases his disapproval of title of the land submitted to him under a written contract between the vendor and the vendee, making the opinion of such attorney final as to title, is not admissible to change the written contract, but is competent as proof of a circumstance throwing light on the action of the attorney; when, however, there is no evidence introduced or offered which, in connection with the conduct of the attorney, tends to prove bad faith the rejection of testimony showing the grounds of disapproval does not constitute prejudicial error.

**4. Same—Approval of Title—Statement of Grounds.**

When, according to the stipulation in a contract for the sale of an oil and gas lease, the title to the land is unqualifiedly subject to the approval of the vendee's attorney, it is not necessary, in case of disapproval of the title, for such attorney either to give his reasons therefor or to call the attention of the opposite party to defects in the title for the purpose of correction. in the absence of a contract requiring such to be done. .

(Syllabus by Stewart, C.)

Error from District Court, Jefferson County; Frank Mathews, Assigned Judge.

Action by R. P. Clay and George W. Taylor against the First National Bank of Waurika and E. J. Kelly. Judgment for plaintiffs, and defendants bring error. Affirmed.

Bridges & Vertrees, for plaintiffs in error.

Bond, Melton & Melton and Guy Green, for defendants in error.

Opinion by STEWART, C. The plaintiffs brought action against the defendants for the return and recovery of money deposited in escrow with the defendant First National Bank of Waurika, Okla., in the sum of $1,500 as "earnest money" to secure the

faithful performance on their part of an oil and gas lease contract, the lease being made to the plaintiffs by the defendant E. J. Kelly on 1,000 acres of land situated in Jefferson county. It was stipulated in the lease contract that the defendant should furnish to the plaintiffs a complete abstract of title to the land to be submitted to A. L. Zinser, attorney for plaintiffs, and that the lease should take effect and the mutual obligations of the parties accrue only in case such attorney should approve the title to the land. The undisputed evidence is that the abstract was furnished and was examined by the attorney within a reasonable time, the title being by him disapproved; that plaintiffs immediately notified the defendant E. J. Kelly of such disapproval and of the intention of the plaintiffs to proceed no further under the lease, demand being made for the return of the $1,500 deposited. The defendant bank paid out the money to Kelly after due notice from the plaintiffs not to do so. Kelly refused to return the same to plaintiffs. There was no evidence of bad faith in the disapproval and rejection of the title, and the trial court, after hearing the testimony, peremptorily instructed the jury to return a verdict for the plaintiffs, which verdict was accordingly returned and judgment rendered thereon for the plaintiffs. The defendants urge as error: First, the court erred in refusing to allow the defendants to introduce certain competent evidence; second, the court erred in refusing to submit the case to the jury.

During the course of the trial the defendants offered to prove that the opinion of the attorney was based upon his general objection to the title of certain tracts of land known as "government lands," being unallotted Indian lands sold by the United States government, and upon which final payment had not been made. The defendants offered to prove that when the written contract was made it was agreed and understood between the parties that the lands to be leased were mostly of such class, and that there would be no objection to the title on that ground. This testimony the court excluded, the defendants preserving exceptions. Testimony as to any agreement had at the time of or prior to the execution of the written contract as to the kind of title the plaintiffs would accept is inadmissible, as the contract speaks for itself, and contemplates only such title as would be approved by plaintiffs' attorney. The written contract is complete. and does not contain such ambiguities as would authorize the introduction of the proffered evidence in explanation of its terms. Evidence

as to the attorney's reasons for rejecting the title might be admissible as throwing light upon his actions to be considered in connection with other evidence on the question of good or bad faith. The defendants, however, have made no showing in the record that they have suffered prejudice in such respect from the rejection of testimony offered. Such testimony in itself would not establish bad faith, and there is not sufficient other testimony introduced or offered which, in connection therewith, would have justified the submitting of the question of good or bad faith to the jury. The undisputed evidence authorized the directing of a verdict for the plaintiff. In Farm Land Mortgage Co. v. Wilde, 41 Okla. 45, 136 Pac. 1078, the syllabus reads in part:

"The courts generally hold that parties have the right to make any contract which is not unlawful or against public policy. They have the right to provide for an arbitrator whose decision, in the absence of fraud, shall be final. They have the right, in making a contract for the sale of land, to make an attorney or any one else exclusive and final judge as to whether or not the title is defective. In such case, the courts are inclined to leave the parties to abide by the contract as they have made it, and not to make a different one."

It is well settled that, when, by the terms of a contract of sale of land the title is to be approved by any particular person or attorney, the opinion of such person is final and binding, in the absence of fraud or bad faith. A leading case on this question is Church v. Shanklin, 95 Cal. 626, 30 Pac. 789, 17 L. R. A. 207, in which case the rule is epitomized in the following words:

"A vendee cannot be compelled to accept a title which is in fact perfect, but which his attorney in good faith refuses to approve where his contract requires the title to be perfected 'to the satisfaction of' such attorney."

Further collation of authorities would be useless.

The defendants urge in support of their claim of bad faith that the evidence shows that the attorney in question was the secretary of Healdton Pool Oil & Gas Company, for whom the plaintiffs were in fact procuring the lease; that, before passing upon the abstract of title furnished, the attorney wrote to the defendant Kelly, claiming that the lands contracted for were about six miles east of where the contract purported to locate them; that the attorney further says in his letter:

"I will examine the abstract anyway, however, and report on title as soon as I have had time to make a careful examination."

Defendants also complain that the defects in the title or objections to the same were not pointed out for the purpose of correction. We cannot agree that such facts, if proven, are sufficient to authorize a finding of bad faith. The burden was upon the defendants to prove bad faith on the part either of the plaintiffs, or their attorney acting for them. It was perfectly competent and proper for the parties to contract to leave the question of title to any person, whether interested or not, and this was done. No bad faith will be presumed because of such interest. The fact that the attorney called attention to the lands being situated otherwise than located in the contract does not affect the question of good faith in passing on the title. In the absence of a stipulation in the contract requiring the same, the attorney was under no duty to point out defects in the title or disclose his objections for the purpose of correction. Such has been held in McCroskey v. Ladd, 3 Cal. Unrep. Cas. 433, 28 Pac. 216; Lessenich v. Sellers, 119 Iowa, 314, 93 N. W. 348, and we think the holding is sound. In the case at bar, it would have been futile to have given Kelly an opportunity to correct alleged defect in the title, as, according to the showing of defendants, the objection was to a particular class of titles to Indian lands, and the objection could have been met by the vendor.

The trial court did not err in peremptorily instructing the jury, and the judgment is affirmed.

By the Court: It is so ordered.

### On Rehearing.

Opinion by RUMMONS, C. Plaintiffs in error have filed a petition for rehearing in this cause, in which it is strenuously insisted that the court, in the opinion handed down: (1) Overlooked the issues presented by the pleadings; (2) overlooked the error complained of in the rejection of competent evidence offered at the trial of the cause; (3) overlooked the question submitted of the right of the trial court to take from the jury the decision of questions of fact; (4) overlooked the terms of the contract sued upon. In the brief and in oral argument counsel for plaintiffs in error earnestly insists that the defendants in error were not entitled to recover the money deposited with the plaintiff in error bank, arguing with much plausibility that the provisions contained in the contract as to the deposit of the $1,500 earnest money and its application by the bank are entirely independent of the provisions

in said contract relating to the examination by the attorney of the defendants in error of the abstracts of title to the land involved. The provisions in the contract relative to the deposit of the $1,500 are as follows:

"It is further agreed and understood that the second parties shall begin actual work in sinking a well upon a portion of said land within sixty days from the date said abstracts are furnished by the first party to the second parties as herein agreed upon and continues said work in sinking wells until two wells have been sunk, at a depth of not less than sixteen hundred feet, and at least two wells shall be put down and drilled upon said land at a depth of not less than sixteen hundred feet within six months from the date of this lease become effective unless oil is found in paying quantities at less depth than sixteen hundred feet.

"It is further agreed that the said second parties shall immediately deposit in the First National Bank of Waurika, Oklahoma, fifteen hundred dollars ($1,500.00) cash at the time of signing this contract, together with this contract, which shall be considered placed in said bank as earnest money.

"It is especially agreed and understood that in the event said second parties shall fail to comply with the provisions of this contract in beginning work, as agreed on herein, within sixty days as provided for herein then the said fifteen hundred dollars ($1,500.00) shall be paid to said first party as his damages agreed upon as liquidated damages without any further notice or order to or from said second parties."

Counsel for plaintiffs in error with much ingenuity and ability argues that this provision of the contract was not dependent upon the opinion of the attorney upon the abstracts of title to said land, but that under the terms of the contract the defendants in error bound themselves to commence within 60 days the drilling of wells upon the lands involved, nothwithstanding their title thereto under the lease contract might be wholly defective, and that they bound themselves in the event of their failure so to drill to pay to the plaintiff in error Kelly the sum of $1,500.

Counsel for plaintiffs in error, however, overlooks the provision contained in the contract immediately preceding the provisions above quoted. It is as follows:

"The said first party agrees to furnish a complete abstract to said second parties to the above land within two weeks from this date and the same is to be submitted to A. L. Zinser, attorney of said second parties, who shall pass upon the title to said land. In the event the attorney of said parties shall approve said title, then this lease shall take effect from the date the abstracts were furnished by the said first party to said second parties."

Counsel for plaintiffs in error speciously argues that all the defendant in error Kelly was required to do under this provision of the contract was to furnish a complete abstract, and that the only effect of the approval of the attorney of defendants in error of said abstracts was to fix the date of the commencement of the term of the lease. It is the duty of the court to give a reasonable construction to all the terms of a contract and not to construe the terms thereof so as to lead to absurd conclusions. As counsel for plaintiffs in error would construe this contract, all that the plaintiff in error Kelly, was required to do was to furnish complete abstracts. Counsel omits to state in his brief and argument what the defendants in error were to do with these abstracts when they had been passed upon by their attorney and what object there might be in requiring abstracts of title. It seems clear to us that the purpose of the provisions of the contract above quoted, requiring Kelly to furnish abstracts of title to be passed upon by the attorney of defendants in error, and reciting that in the event of his approval of the title the contract should take effect as of the date the abstracts were furnished, was to stipulate as to whether or not the contract should in fact take effect. The only reasonable conclusion that can be reached from the language used in the contract is, in the event of the approval of the abstracts, the contract should be effectual and binding, and in the event of disapproval thereof the contract should not take effect, or, as said in the syllabus of the opinion, "that the mutual obligations of the parties should accrue only in the case of the approval of the title."

The contract as drawn depended for its taking effect upon the approval of the abstracts of title by the attorney of defendants in error, and this approval constituted a condition precedent which it was perfectly competent for the parties to the contract to agree upon. 13 C. J. 564, § 532. The condition precedent never having occurred, the contracts never took effect, and the defendants in error violated no provisions of the contract in failing to commence drilling.

Counsel for plaintiffs in error contends that the trial court committed error in rejecting competent evidence which was overlooked by this court. Both in the brief upon the petition for rehearing, at the oral argument, and in the supplemental brief, counsel contends that the court, in its opinion, made a new contract for the parties. It seems to

us from the argument of counsel that plaintiffs in error were attempting at the trial of this cause, and counsel is now attempting, to substitute a new contract for the one actually signed by the parties. The evidence rejected was fully discussed in the opinion. The plaintiffs in error offered to show oral conversations between plaintiff in error Kelly and defendants in error, both before and at the time the contract was drawn, as to the character of the title to the lands and as to what would be done by Kelly in perfecting title when defendants in error were ready to commence drilling.

It is argued by counsel for plaintiffs in error that this evidence was competent to show that defendants in error perfectly understood that the lease covered surplus Indian land sold by the government upon partial payments, and that it was competent as explaining what was to be done by the attorney for defendants in error in examining the abstracts submitted by Kelly. Counsel for plaintiffs in error contends that all the attorney was required to do under the terms of the contract was to pass upon the completeness of the abstracts of title, and that if the abstracts were complete, whether or not they showed title, the contract took effect. We have no doubt that it was perfectly competent for Kelly and defendants in error to so contract. Had they done so, there would be great force in counsel's contention that defendants in error were not entitled to recover. However, they did not so contract. The contract provides, "in the event the attorney of said parties shall approve said title," not the abstracts. The contract does not provide that the attorney should pass only upon the abstracts, but it provides, "who shall pass upon the title to said land." Counsel, in his earnest desire to secure for his client his pound of flesh, seeks to interpolate terms into the contract which are not found there, and seeks to substitute an entirely different agreement from the one written. Since "it is not so denominated in the bond," we cannot follow the precedent laid down by the learned Justice Portia and decree the forfeiture demanded.

The evidence offered by plaintiffs in error and rejected was clearly incompetent as tending to modify the terms of a written contract by parol, and upon the issue of whether or not the attorney for defendants in error acted in good faith in examining the abstracts it was wholly immaterial, since it shed no light upon the motives that may have actuated the attorney for defendants in error.

The trial court permitted the plaintiffs in error, upon cross-examination of the attorney for defendants in error, to inquire into his reasons for rejecting the title. Plaintiffs in error produced and offered no evidence tending to show that the opinion upon the abstracts given by the attorney for defendants in error was not given in good faith. They did not even attempt to show that the opinion was wrong, and that the title was good.

This being the state of the case, there being no competent evidence before the jury to rebut the presumption that the attorney for defendants in error in examining the abstracts acted in good faith, there was nothing before the jury to show that the tentative contract between defendants in error and Kelly took effect, and there was therefore no issue to be submitted to the jury.

We have given the petition for rehearing more extended consideration than the importance of the questions involved warrants, solely because of the zeal and earnestness of counsel in his contention that the court in the opinion made a new contract for the parties.

The petition for rehearing is denied.